NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2940-15T3

CYNTHIA M. BLAKE,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and LAUREL HEALTHCARE,
LLC,

      Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| September 28, 2017 |
| APPELLATE DIVISION |

Submitted June 6, 2017 — Decided September 28, 2017

Before Judges Messano, Suter and Grall.

On appeal from the Board of Review, Department of Labor, Docket No. 068,871.

South Jersey Legal Services, Inc., attorneys for appellant (Alan W. Lesso, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent Board of Review, Department of Labor (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Lauren J. Zarrillo, Deputy Attorney General, on the brief).

Respondent Laurel Healthcare, LLC has not filed a brief.

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Nearly six decades ago, the Legislature amended New Jersey's Unemployment Compensation Law (the UCL), N.J.S.A. 43:21-1 to -56, disqualifying applicants from receiving unemployment benefits if they "left work voluntarily without good cause attributable to such work." Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989) (quoting N.J.S.A. 43:21-5(a)). "Accordingly, benefits are available to a worker who voluntarily leaves his job only if it [was] for 'good cause attributable to [the] work.'" Utley v. Bd. of Review, 194 N.J. 534, 544 (2008) (quoting N.J.S.A. 43:21-5(a)). A worker who leaves "for personal reasons, however compelling, . . . is disqualified under the statute." Ibid.; see also Ardan v. Bd. of Review, 444 N.J. Super. 576, 585 (App. Div. 2016) ("An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily with good cause."), certif. granted, 229 N.J. 135 (2017).

The disqualification extends from the week the employee leaves work, "and for each week thereafter until [she] becomes reemployed . . . works eight weeks . . . and has earned . . . at least ten times [her] weekly benefit rate." N.J.S.A. 43:21-5(a). The current disqualification period represents an extension, from four to eight weeks and from six to ten times the benefit rate, which enactment coincided with changes to

other provisions of the UCL intended to "reduce[] unemployment insurance (UI) tax rates" imposed on employers. L. 2010, c. 37, § 2; Senate Labor Comm., Statement to S. 1813 (May 10, 2010).

This appeal requires us to construe the following language added to N.J.S.A. 43:21-5(a) in 2015, which provides the disqualification

> shall not apply to an individual <u>who voluntarily leaves work with one employer to accept from another employer employment which commences not more than seven days after the individual leaves employment with the first employer</u>, if the employment with the second employer has weekly hours or pay not less than the hours or pay of the employment of the first employer, <u>except that if the individual gives notice to the first employer that the individual will leave employment on a specified date and the first employer terminates the individual before that date, the seven-day period will commence from the specified date</u>.
>
> [N.J.S.A. 43:21-5(a), as amended by L. 2015, c. 41 § 1 (emphasis added).]

In this case, Cynthia M. Blake provided her employer, Laurel Healthcare LLC (Laurel), with two weeks' notice that she was leaving her position to begin working for Alaris Healthcare (Alaris) at an increased hourly wage. Two days before she was to start, Alaris told Blake the position was no longer available. When Blake tried to rescind her resignation, Laurel informed her it no longer required her in a full-time capacity. The Deputy denied Blake's application for unemployment benefits

because she left work voluntarily without good cause attributable to the work. N.J.S.A. 43:21-5(a).[1]

The Tribunal affirmed the Deputy's decision, reasoning the Amendment's exception applied only if Blake actually commenced her employment with Alaris. In its final decision, the Board of Review (the Board) agreed with the Tribunal's reasoning and affirmed Blake's disqualification. This appeal followed.

Blake argues the plain language of the Amendment does not impose "a commencement requirement."[2] She contends the Legislature intended "to protect a worker against a situation where . . . she leaves one job for a better job which subsequently falls through." The Board counters that the Amendment's plain language required Blake to commence work with Alaris in order for the exception to apply. It further contends

---

[1] At the time of the hearing before the Appeal Tribunal (the Tribunal), Blake continued to work for Laurel in a part-time capacity, had not found full-time employment and had not yet worked eight weeks earning the minimum of ten times her weekly benefit rate of $325 which would otherwise requalify her for unemployment benefits. See N.J.S.A. 43:21-5(a).

[2] The Tribunal cited N.J.A.C. 12:17-9.1(e)(9) as supporting its conclusion. That regulation provides: "An individual's separation from employment shall be reviewed as a voluntarily leaving work issue where the separation was for the following reasons including . . . [t]o accept other work." We agree with Blake that the Tribunal inexplicably engrafted language on the regulation that does not exist. The Board concedes this point.

the legislative history of the Amendment supports that interpretation.

In a recent opinion, a panel of our colleagues essentially accepted Blake's interpretation of the Amendment and rejected the Board's. See McClain v. Bd. of Review, ___ N.J. Super. ___, ___ (App. Div. 2017) (slip op. at 2) ("We reject the Board's interpretation and reverse, finding a claimant need not actually start the new employment to be exempt from disqualification under N.J.S.A. 43:21-5(a)."). We respectfully disagree with our colleagues and conclude the Amendment's exception does not apply unless the employee accepts employment with another employer "which commences not more than seven days after the individual leaves employment with the first employer." N.J.S.A. 43:21-5(a). We therefore affirm the Board's decision.

We need not reiterate the applicable standards that guide our review, which the panel capably explained in McClain. McClain, supra, slip op. at 5-6. Our colleagues determined "nothing in the plain language of the [A]mendment support[ed] the imposition of . . . a condition" that "[the] claimant actually commence the new employment within the seven-day period." Id. at 10. We disagree. In our view, the plain language of the Amendment fully supports the Board's position.

The acceptance of a commensurate position with another employer does not trigger the Amendment's exception to disqualification. Rather, it is only the employee's acceptance of "employment which commences not more than seven days after the individual leaves employment with the first employer," N.J.S.A. 43:21-5(a)(emphasis added), that transforms otherwise disqualifying conduct — tendering a voluntary resignation — into an insignificant event for purposes of eligibility. Interpreting the language of the Amendment by giving the words their "generally accepted meaning, according to the approved usage," N.J.S.A. 1:1-1, "which" refers to something previously mentioned — employment accepted from another employer — and provides further information about that employment — it commences within seven days. Oxford English Dictionary, www.oed.com/view/entry/228284 (last visited Sept. 18, 2017) (defining "which" as, "[i]ntroducing a clause defining or restricting the antecedent thus completing the sense.").

Blake would have us read the Amendment to apply whenever an employee resigns to accept employment "which was intended to commence" within seven days of the effective resignation date, but never did. Simply put, we will not "insert language that the Legislature could have included in [the Amendment] -- but

A-2940-15T3

did not." <u>Jersey Cent. Power & Light Co. v. Melcar Util. Co.</u>, 212 <u>N.J.</u> 576, 596 (2013).

Moreover, our construction gives relevancy to the second portion of the Amendment, which provides "if the individual gives notice to the first employer that [she] will leave employment on a specified date and the first employer terminates [her] before that date, the seven-day period [in which the job commences] will commence from the specified date[,]" not the date of termination. <u>N.J.S.A.</u> 43:21-5(a). Obviously, the Legislature did not want the first employer's sudden and unilateral decision to terminate the employee who had given notice to adversely affect her continued eligibility for benefits simply because the second job commenced more than seven days later.

Blake's interpretation of the Amendment, adopted by the panel in <u>McClain</u>, renders unnecessary this second part of the Amendment. If an employee resigned, yet remained eligible for benefits by accepting a position that was intended to commence within seven days of her resignation date, but never did, she would become eligible for benefits upon the date of her actual termination. Any difference between the anticipated resignation date and the actual termination date would be irrelevant. Basic principles of statutory interpretation require us to "presume

that every word in a statute has meaning and is not mere surplusage." Jersey Cent. Power & Light, supra, 212 N.J. at 587 (quoting Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 222 (2012)). Blake's interpretation of the Amendment renders the second portion nugatory.

Blake argues in her reply brief, "Logically, the failure of the second job to commence leaves the worker in the same position as that which occurs when the worker is laid off shortly after the second job does commence." That may be so, but the statement ignores the potential consequences to the two employers and is inconsistent with the Legislature's purpose in enacting the Amendment, as the legislative history amply demonstrates.

The Senate Labor Committee's favorable report on S. 2802, which became the Amendment, made clear that the bill was intended to "make an exception" from the usual disqualification under N.J.S.A. 43:21-5(a), "for a worker who leaves one job to accept a subsequent job at least equal in hours or pay, but is laid off from the subsequent job." Senate Labor Comm., Statement to S. 2082 (June 5, 2014) (emphasis added); see also Assembly Labor Comm., Statement to S. 2082 (September 11, 2014)

and Assembly Appropriations Comm., Statement to S. 2082 (February 5, 2015) (same).[3]

In all instances, the Committees noted that the bill would not fiscally affect the first employer's contributions to the unemployment compensation fund, in particular, future rates of contribution based upon benefit experience. N.J.S.A. 43:21-7(c)(1).

> Another portion of the current law, [N.J.S.A.] 43:21-7(c)(1), provides that an employer's UI account is not charged for UI benefits paid to a claimant if the employee's employment . . . ended in any way

---

[3] Without specificity, the Committee statements referenced similar laws enacted by twenty-six states, and regulations enacted in five others, that had the same purpose. Senate Labor Comm., Statement to S. 2082 (June 5, 2014). In this appeal, neither Blake nor the Board have cited to the laws of our sister states, but the panel in McClain specifically considered two of them and found the language of those statutes explicitly provided that the employee actually commence work with the second employer. McClain, supra, slip op. at 13 n. 3. We cannot quarrel with our colleagues' analysis in this regard.

However, contrary to the course taken by our Legislature, a number of other states have included explicit language that adopts Blake's position, i.e., that commencement of employment with the second employer was not necessary for the exemption from disqualification to apply. See, e.g., Alaska Admin. Code 8, § 85.095 (2017) (providing that "leaving work to accept a bona fide offer" is considered when determining "the existence of good cause . . . for voluntarily leaving work."); Ariz. Admin. Code § R6-3-50365 (2017) ("A worker who . . . quits because he has prospects of other work, but no definite offer, leaves voluntarily without good cause in connection with his work."); Cal. Code Regs. 22 § 1256-19(c) (2017) ("An individual who leaves work to accept other work has good cause for leaving the work if there was a definite assurance of employment in another substantially better job.").

which would have disqualified the claimant from UI benefits if the employee had applied for benefits at the time when the employment ended, including if the employee voluntarily left work with that employer without good cause attributable to that work. Therefore, under those provisions of the current law, that employer's account would not be charged when the claimant leaves work with that employer to accept employment from another employer, and the claimant is, pursuant to the provisions of this bill, paid UI benefits after being laid off by the subsequent employer, even if the first employer paid wages to the claimant during the claimant's base year.

[Senate Labor Comm., Statement to S. 2082 (June 5, 2014); Assembly Labor Comm., Statement to S. 2082 (September 11, 2014); Assembly Appropriations Comm., Statement to S. 2082 (February 5, 2015) (emphasis added).][4]

---

[4] N.J.S.A. 43:21-7(c)(1) provides:

[A]n employer's account shall not be charged for benefits paid to a claimant if the claimant's employment by that employer was ended in any way which, pursuant to subsection (a), (b), (c), (f), (g) or (h) of [N.J.S.A.] 43:21-5, would have disqualified the claimant for benefits if the claimant had applied for benefits at the time when that employment ended. Benefits paid under a given benefit determination shall be charged against the account of the employer to whom such determination relates. When each benefit payment is made, notification shall be promptly provided to each employer included in the unemployment insurance monetary calculation of benefits. Such notification shall identify the employer against whose account the amount of such payment is being charged, shall show at

(continued)

The sponsor of S. 2802, Senator Fred H. Madden, was more explicit:

> The bill also provides that an employer's account will not be charged for UI benefits paid to a claimant even if: the employer paid wages to the claimant during the claimant's base year; the claimant leaves work with that employer to accept employment from another employer; and the claimant is paid UI benefits <u>after being laid off by the subsequent employer</u>.
>
> [<u>Sponsor's Statement to S. 2802</u> (May 19, 2014) (emphasis added).]

The Office of Legislative Services (OLS) was asked to consider the fiscal impact of S. 2802 upon the unemployment insurance trust fund. In recognizing the difficulty of the task, OLS noted "there is no data available . . . to quantify the number of these claimants who had secured future employment and <u>then were subsequently laid off from the new employment</u>." <u>Office of Legis. Servs., Legislative Fiscal Estimate to S. 2802</u> (June 19, 2014) (emphasis added).

The Senate Labor Committee's June 5, 2014 hearing makes clear that committee members intended to protect an employee who actually "assume[s] . . . new employment within seven days."

---

(continued)
> least the name and social security account number of the claimant and shall specify the period of unemployment to which said benefit payment applies.

Senate Labor Comm. Hearing on S. 2082, (June 5, 2014) (statement by Senator Madden), http://www.njleg.state.nj.us/media/archive_audio2.asp?KEY=SLA&SESSION=2014. The legislators wanted that employee's eligibility for benefits to carry forward, rather than cause the eligibility "clock" to "reset to zero" once the employee started work with the second employer. Ibid.

Finally, as a practical matter, the first employer, in this case, Laurel, who did nothing to cause Blake to quit, is ill-equipped to rebut any claim for benefits. We logically assume that most offers of other employment are not reduced to writing. Therefore, an employer who participates in a hearing before the Appeal Tribunal can only testify to what is undisputed, i.e., that the employee quit her position. It is unlikely that the employer could call the second employer, who is not a respondent to the employee's appeal and may be unknown, as a witness to challenge whether the claimant actually had received an offer of employment and what were its terms. Despite this disadvantage, the first employer would bear the financial consequences of any benefits awarded. N.J.S.A. 43:21-7(c)(1).

In short, we conclude the plain language of the Amendment, as well as its legislative history, support the conclusion that it applies only if the employee voluntarily leaves employment and actually "commences" employment with a second employer.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2940-15T3