SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Patricia J. McClain v. Board of Review, Department of Labor** (A-52-17) (080397)
**Cynthia M. Blake v. Board of Review, Department of Labor** (A-65-17) (080198)

**Argued January 14, 2019 -- Decided April 29, 2019**

**ALBIN, J., writing for the Court.**

Under New Jersey's Unemployment Compensation Law (UCL or Act), N.J.S.A. 43:21-1 to -71, an employee terminated from employment after working a certain number of weeks is ordinarily entitled to unemployment insurance (UI) benefits. An employee who voluntarily leaves her employment without just cause, however, is not entitled to such benefits. N.J.S.A. 43:21-5(a). The Legislature recognized the inequity facing those employees who served a substantial period with one employer and then voluntarily left for an equal or better opportunity with another employer, only to be terminated shortly afterwards. To redress that problem, the Legislature in 2015 passed an amendment to N.J.S.A. 43:21-5(a), which ensured that an employee who was qualified for UI benefits during her first employment would not be disqualified from such benefits if terminated shortly after beginning her second employment.

In these consolidated appeals, each employee -- Patricia McClain and Cynthia Blake, respectively -- accepted an offer of employment from a second employer only to have the offer rescinded before the start date, but after resignation from the first position. The question is whether in such a circumstance, the employee, whose offer is rescinded through no fault of her own, is entitled to UI benefits pursuant to N.J.S.A. 43:21-5(a).

McClain and Blake both filed for unemployment insurance benefits with the New Jersey Department of Labor. In both cases, the Deputy Director of Unemployment Insurance denied their claims. In both cases, the Appeal Tribunals affirmed because McClain and Blake did not commence their new employment within seven days of leaving their former employer, thus disqualifying them for benefits under N.J.S.A. 43:21-5(a). The Board of Review affirmed the Appeal Tribunal in both cases. McClain and Blake separately appealed.

In McClain's case, the appellate panel reversed. 451 N.J. Super. 461, 464-65 (App. Div. 2017). The panel's plain reading of N.J.S.A. 43:21-5(a) led it to conclude that so long as the employee accepts the job offer, which is set to begin within seven days of leaving the first employer, she is entitled to UI benefits if the offer is rescinded and she is

1

rendered unemployed. Id. at 469-73. The panel determined that the clear language of the statute governs and is supported by the legislative history and the remedial purposes of the UCL. Id. at 470-74. The Court granted the Board of Review's petition for certification. 232 N.J. 377 (2018).

In Blake's case, the appellate panel affirmed the Board of Review's decision to deny Blake UI benefits because Blake voluntarily quit her job with her first employer and never started her second employment due to the rescinded offer. 452 N.J. Super. 7, 10-11 (App. Div. 2017). The panel construed the phrase "employment which commences" to mean that the employee must actually begin work with the second employer to be entitled to UI benefits. Id. at 12. The Blake panel believed that the first employer's UI account would be charged for UI benefits paid to a claimant who became unemployed as a result of the second employer's rescission of the job offer, id. at 13-16, and concluded that the first employer would have difficulty "challeng[ing] whether the claimant actually had received an offer of employment and what were its terms," id. at 16. The Court granted Blake's petition for certification. 233 N.J. 296 (2018).

**HELD:** Based on its interpretation of N.J.S.A. 43:21-5(a), the Court concludes that McClain and Blake are entitled to UI benefits because (1) they qualified for UI benefits at their former employment at the time of their departure, (2) they were scheduled to commence their new jobs within seven days of leaving their former employment, and (3) their new job offers were rescinded through no fault of their own before the start date.

1. In enacting the UCL, the Legislature declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state" and that the general welfare of the state required the "setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment." N.J.S.A. 43:21-2. The UCL is social legislation that provides some income for the worker earning nothing, because he is out of work through no fault or act of his own. Because of the remedial purpose of the UCL, it is to be construed liberally in favor of allowance of benefits. (pp. 12-13)

2. The general rule under the UCL is that an employee who leaves "work voluntarily without good cause attributable to such work" is disqualified from receiving UI benefits until she is reemployed for a defined number of weeks. See N.J.S.A. 43:21-5(a). Before 2015, that general exclusion of UI benefits for a voluntary quit extended to an employee who held a long-term job and left it for an equal or better employment opportunity, only to be terminated shortly after beginning work. To ameliorate that harsh result, the Legislature amended N.J.S.A. 43:21-5(a) to protect employees who accept new employment set to begin within seven days of leaving their former employer. The Board of Review and McClain and Blake give dueling plain-language interpretations of N.J.S.A. 43:21-5(a). In the Board's view, the triggering event for UI benefit eligibility is the commencement of the new employment; in McClain and Blake's view, it is the

2

acceptance of new employment. The Board contends that, under the statute, entitlement to UI benefits requires that the employee <u>actually</u> begin work with the new employer within seven days. McClain and Blake claim that entitlement to UI benefits merely requires that an employee accept an offer of employment <u>scheduled to</u> begin seven days after leaving her former employment. That interpretation allows for the granting of UI benefits when the new employer rescinds the offer before the employee begins work. Concluding that a plain reading of the statute yields two plausible interpretations, the Court reviews the legislative history of N.J.S.A. 43:21-5(a) and notes that it does not provide the necessary clarity to give meaning to the disputed language. (pp. 13-18)

3. Presented with ambiguous statutory language and inconclusive legislative history, the Court looks to the underlying objective of the UCL and the equitable purpose of the amendment. McClain and Blake fall within the category of workers the Legislature intended to protect by the amendment. Under the <u>Blake</u> panel's interpretation, McClain and Blake could have collected UI benefits if they had commenced their new jobs and were fired the next day, but instead they are disqualified from collecting benefits because their offers were rescinded just days before starting their new jobs. That absurd result is not one that the Legislature likely envisioned or intended and is completely at odds with the enlightened purposes of the UCL. (pp. 18-19)

4. The Court concludes that McClain and Blake are entitled to UI benefits. The <u>Blake</u> panel mistakenly believed that the "first employer would bear the financial consequences of any benefits awarded" if the new employer rescinded the offer before the employee's start date. N.J.S.A. 43:21-7(c)(1) makes clear that an employer's UI account is not charged when an employee voluntarily quits her employment. The Court also rejects the <u>Blake</u> panel's conclusion that the last clause of the amendment is inconsistent with an interpretation of N.J.S.A. 43:21-5(a) that extends UI benefits to employees whose accepted job offers are rescinded before the start date. The provision on which the panel relied merely dictates that when an employee gives notice that she will quit her job on a specific date, that is the date from which to calculate the seven-day period before she begins her job. Last, the Court does not harbor the concerns expressed by the <u>Blake</u> panel about the difficulty of exposing the hypothetical employee who might feign a rescinded offer to qualify for UI benefits because the employee must satisfy the burden of establishing that she is entitled to UI benefits through an adversarial process. (pp. 20-24)

**The judgment of the <u>McClain</u> panel is AFFIRMED, the judgment of the <u>Blake</u> panel is REVERSED, and the matters are REMANDED to the Board of Review for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

Patricia J. McClain,

Appellant-Respondent,

v.

Board of Review, Department of Labor,

Respondent-Appellant,

and

Learning Edge Academy, Inc.,
and Kids Choice Academy,

Respondent.

Cynthia M. Blake,

Appellant-Appellant,

v.

Board of Review, Department of Labor,

Respondent-Respondent,

and

Laurel Healthcare, LLC,

Respondent.

McClain v. Bd. of Review (A-52-17):
On certification to the Superior Court,
Appellate Division, whose opinion is reported at
451 N.J. Super. 461 (App. Div. 2017).

Blake v. Bd. of Review (A-65-17):
On certification to the Superior Court,
Appellate Division, whose opinion is reported at
452 N.J. Super. 7 (App. Div. 2017).

Argued                    Decided
January 14, 2019          April 29, 2019

Melissa Dutton Schaffer, Assistant Attorney General,
argued the cause for the Department of Labor in both
cases (Gurbir S. Grewal, Attorney General, attorney;
Melissa Dutton Schaffer, of counsel, and Peter H.
Jenkins, Deputy Attorney General, and Christopher
Weber, Deputy Attorney General, on the briefs).

Alan W. Lesso argued the cause for appellant in Blake v.
Bd. of Review (South Jersey Legal Services, Inc.,
attorneys; Alan W. Lesso, Kenneth M. Goldman and
Cassandra Stabbert, on the briefs).

Kenneth M. Goldman argued the cause for respondent in
McClain v. Bd. of Review (South Jersey Legal Services,
Inc., attorneys; Kenneth M. Goldman, Alan W. Lesso and
Cassandra Stabbert, on the briefs).

Alan H. Schorr argued the cause for amicus curiae
National Employment Lawyers Association of New
Jersey in both cases (Schorr & Associates, attorneys;
Alan H. Schorr and Adam L. Schorr, on the brief).

Under New Jersey's Unemployment Compensation Law (UCL or Act), N.J.S.A. 43:21-1 to -71, an employee terminated from employment after working a certain number of weeks is ordinarily entitled to unemployment insurance (UI) benefits. An employee who voluntarily leaves her employment without just cause, however, is not entitled to such benefits. N.J.S.A. 43:21-5(a). The Legislature recognized the inequity facing those employees who served a substantial period with one employer and then voluntarily left for an equal or better opportunity with another employer, only to be terminated shortly afterwards. Those employees terminated by the second employer were denied UI benefits because they had not worked the requisite time at the second job, despite long-term service at their previous employment.

To redress that problem, the Legislature in 2015 passed an amendment to N.J.S.A. 43:21-5(a), qualifying an employee to receive UI benefits if she "voluntarily leaves work with one employer to accept from another employer employment which commences not more than seven days after the individual leaves employment with the first employer." See L. 2015, c. 41, § 1 (modifying N.J.S.A. 43:21-5(a)) (eff. May 4, 2015). The amendment ensured that an employee who was qualified for UI benefits during her first

employment would not be disqualified from such benefits if terminated shortly after beginning her second employment.  Ibid.

In the two consolidated appeals before us, each employee accepted an offer of employment from a second employer only to have the offer rescinded before the start date -- leaving her jobless.  The question is whether in such a circumstance, the employee, whose offer is rescinded through no fault of her own, is entitled to UI benefits pursuant to N.J.S.A. 43:21-5(a).

Two Appellate Division panels have reached diametrically opposite answers to that question based on divergent interpretations of N.J.S.A. 43:21-5(a).  One panel concluded that the acceptance of an offer of employment to commence within seven days after leaving the first employer -- not the actual start of new employment -- triggers the UI benefit protections of N.J.S.A. 43:21-5(a).  McClain v. Bd. of Review, 451 N.J. Super. 461, 464-65 (App. Div. 2017).  Another panel concluded that the employee must actually begin working for the second employer within the seven-day period to be entitled to UI benefits.  Blake v. Bd. of Review, 452 N.J. Super. 7, 11 (App. Div. 2017).

Both appellate panels present plausible interpretations of N.J.S.A. 43:21-5(a).  However, only the McClain panel's interpretation is consistent with the remedial purposes of the UCL, an Act we have "construed liberally in favor of allowance of benefits."  Yardville Supply Co. v. Bd. of Review, 114 N.J. 371,

4

374 (1989). The objective of the Act is to provide some income to an employee out of work through no fault of her own. <u>Utley v. Bd. of Review</u>, 194 N.J. 534, 543 (2008). Providing UI benefits to an employee who voluntarily leaves her first employment based on an equal or better offer from a second employer, who then rescinds the offer before the start date of her new employment, fulfills the Legislature's objective in amending N.J.S.A. 43:21-5(a). We therefore determine that the two employees in the cases before us have earned the right to UI benefits.

Accordingly, we affirm the judgment of the <u>McClain</u> panel, reverse the judgment of the <u>Blake</u> panel, and remand for proceedings consistent with this opinion.

I.

A.

The basic facts, which are undisputed, are discerned from McClain's and Blake's unemployment compensation proceedings before the Department of Labor.

Between January 2013 and October 2015, Patricia McClain worked at Learning Edge Academy, Inc., teaching toddlers. McClain worked forty hours per week earning $8.63 per hour. On October 12, 2015, McClain accepted an offer of employment as a preschool teacher at Kids Choice Academy, where she would make $9.25 per hour during a forty-hour work week. Her new job

5

was to begin seven days later.  McClain resigned her teaching position at Learning Edge the day she accepted Kids Choice's job offer.  The next day, however, Kids Choice called McClain and rescinded the job offer because the teacher she was to replace was returning to her former position.

Cynthia Blake worked as a cook at Laurel Healthcare from September 2013 to August 2015.  Blake worked forty hours per week earning $10.70 per hour.  In late July 2015, Blake accepted an offer of employment as a cook at Alaris Healthcare, where she would earn $12.96 per hour during a forty-hour work week.  Blake resigned her full-time position at Laurel and was set to begin work at Alaris within seven days of leaving Laurel.  Two days before Blake's start date, Alaris rescinded the offer to Blake, apparently after deciding to hire someone else.[1]

## B.

McClain and Blake both filed for unemployment insurance benefits with the New Jersey Department of Labor.  In both cases, the Deputy Director of Unemployment Insurance denied their claims.  In both cases, the Appeal Tribunals affirmed because McClain and Blake did not commence their new employment within seven days of leaving their former employer, thus

---

[1]  Blake continued to work at Laurel part-time every other weekend.

disqualifying them for benefits under N.J.S.A. 43:21-5(a). The Board of Review affirmed the Appeal Tribunal in both cases.

McClain and Blake separately appealed.

## II.

## A.

In McClain's case, the appellate panel rejected the Board of Review's interpretation of N.J.S.A. 43:21-5(a) and reversed. McClain, 451 N.J. Super. at 464-65. The panel found that "a claimant need not actually start the new employment to be exempt from disqualification under N.J.S.A. 43:21-5(a)." Id. at 465. In reaching that conclusion, the panel noted that, before the 2015 amendment to N.J.S.A. 43:21-5(a), an employee who voluntarily left her employment to work for another employer was disqualified from eligibility for UI benefits until she had worked a set number of weeks at the new employment. Id. at 467. In the panel's view, after the amendment, so long as the employee seeking an equal or better opportunity "voluntarily leaves work with one employer to accept from another employer employment which commences not more than seven days after the individual leaves employment with the first employer," the employee is entitled to UI benefits whether the new employer rescinds the offer or terminates the new employee after she begins work. Id. at 468-70 (quoting N.J.S.A. 43:21-5(a)).

7

The panel's plain reading of the statute led it to conclude that so long as the employee accepts the job offer, which is set to begin within seven days of leaving the first employer, she is entitled to UI benefits if the offer is rescinded and she is rendered unemployed. Id. at 469-73. The panel determined that the clear language of the statute governs and is supported by the legislative history and the remedial purposes of the UCL. Id. at 470-74. Last, the panel stated that "McClain left her employment with Learning Edge for good cause attributable to the work and was entitled to benefits without disqualification." Id. at 474.

We granted the Board of Review's petition for certification. 232 N.J. 377 (2018). We also granted the motion of the National Employment Lawyers Association of New Jersey (NELA) to participate as amicus curiae.

B.

In Blake's case, the appellate panel affirmed the Board of Review's decision to deny Blake UI benefits because Blake voluntarily quit her job with her first employer and never started her second employment due to the rescinded offer. Blake, 452 N.J. Super. at 10-11. The panel found that the amendment to N.J.S.A. 43:21-5(a) "does not apply unless the employee accepts employment with another employer 'which commences not more than seven days after the individual leaves employment with the first employer.'"

8

Id. at 11 (quoting N.J.S.A. 43:21-5(a)). The Blake panel, like the McClain panel, relied primarily on the plain language of N.J.S.A. 43:21-5(a), but reached the polar opposite conclusion. Id. at 12. The panel construed the phrase "employment which commences" to mean that the employee must actually begin work with the second employer to be entitled to UI benefits. Ibid.

The Blake panel also looked to the UCL's legislative history to support its interpretation. Id. at 13-16. First, the panel relied on a report from the Senate Labor Committee which indicated that the amendment to N.J.S.A. 43:21-5(a) was intended to provide UI benefits "for a worker who leaves one job to accept a subsequent job at least equal in hours or pay, but is laid off from the subsequent job." Id. at 13 (quoting S. Labor Comm. Statement to S. 2082 (June 5, 2014)). Second, the panel emphasized that a legislative committee stated that "the bill would not fiscally affect the first employer's contributions to the unemployment compensation fund, in particular, future rates of contribution based upon benefit experience." Id. at 14 (citing N.J.S.A. 43:21-7(c)(1)). That committee statement clashed with the Blake panel's belief that the first employer's UI account would be charged for UI benefits paid to a claimant who became unemployed as a result of the second employer's rescission of the job offer. Id. at 13-16. Last, "as a practical

9

matter," the Blake panel concluded that if a rescinded offer entitled an employee to UI benefits, the first employer would have difficulty "challeng[ing] whether the claimant actually had received an offer of employment and what were its terms." Id. at 16.

We granted Blake's petition for certification. 233 N.J. 296 (2018). We also granted NELA's motion to participate as amicus curiae.

## III.

### A.

McClain and Blake align their arguments with the reasoning of the panel in McClain, 451 N.J. Super. 461, and the Board of Review aligns its arguments with the reasoning of the panel in Blake, 452 N.J. Super. 7. It bears mentioning, however, that all the parties, as well as NELA, agree that the Blake panel mistakenly believed the first employer's UI account would be charged if claimants received UI benefits upon becoming unemployed due to a second employer's rescission of a job offer.

### B.

The issue before us is one of statutory interpretation. We must determine whether, under N.J.S.A. 43:21-5(a), an employee who voluntarily quits her current employment to accept an equal or better offer of new

10

employment is entitled to UI benefits when the new employer rescinds the offer. Several canons of statutory construction guide our analysis.

Our objective in interpreting any statute is to give effect to the Legislature's intent. Frugis v. Bracigliano, 177 N.J. 250, 280 (2003). When the clear language of the statute expresses the Legislature's intent, our analysis need go no further. Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013). When a plain reading of the statute allows for more than one plausible interpretation or leads to an absurd result or a result at odds with the overall statutory scheme, we may turn to extrinsic evidence. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). Such evidence may include the statute's legislative history, including legislative committee reports, or the stated public policy that gave rise to the legislation. Ibid.

In reviewing a final agency decision, such as that of the Board of Review, we defer to factfindings that are supported by sufficient credible evidence in the record. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). In contrast, although we accord some deference to the Board's interpretation of the statutory scheme that the Legislature has entrusted it to administer, we are not bound by an unreasonable or mistaken interpretation of that scheme, particularly one that is contrary to legislative objectives. Russo v. PFRS, 206 N.J. 14, 27 (2011); see also Utley, 194 N.J. at 551.

11

With those precepts in mind, we turn first to an overview of the Unemployment Compensation Law, N.J.S.A. 43:21-1 to -71.

C.

In enacting the Unemployment Compensation Law in 1936, the Legislature clearly expressed the public policy underlying the Act. N.J.S.A. 43:21-2 ("Declaration of state public policy"). It declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state . . . [and] often falls with crushing force upon the unemployed worker and his family." Ibid. The Legislature further declared that the general welfare of the state required the "setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment." Ibid.

The UCL is "social legislation that provides financial assistance to eligible workers suffering the distress and dislocation caused by unemployment." Utley, 194 N.J. at 543. The essential objective of the Act "is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own." Ibid. (quoting Battaglia v. Bd. of Review, 14 N.J. Super. 24, 27 (App. Div. 1951)). Because of the remedial purpose of the UCL, we have long recognized that "the [Act] is to be construed liberally in favor of allowance of benefits." Ibid. (alteration in original)

12

(quoting Yardville Supply Co., 114 N.J. at 374); see also Provident Inst. for Sav. in Jersey City v. Div. of Emp't Sec., 32 N.J. 585, 590 (1960). Although the UCL is to be liberally interpreted, the unemployment insurance trust fund must be protected against the payment of claims to those ineligible for UI benefits. Brady, 152 N.J. at 212.

Against that backdrop, we must construe the statute at issue.

## D.

The general rule under the UCL is that an employee who leaves "work voluntarily without good cause attributable to such work" is disqualified from receiving UI benefits until she is reemployed for a defined number of weeks. See N.J.S.A. 43:21-5(a). Before 2015, that general exclusion of UI benefits for a voluntary quit extended to an employee who held a long-term job and left it for an equal or better employment opportunity, only to be terminated shortly after beginning work. See N.J.A.C. 12:17-9.1(e)(9) ("An individual's separation from employment shall be reviewed as a voluntarily leaving work issue where the separation was . . . [t]o accept other work[.]"). To ameliorate that harsh result, in 2015, the Legislature amended N.J.S.A. 43:21-5(a) to protect employees who accept new employment set to begin within seven days of leaving their former employer.

N.J.S.A. 43:21-5, as amended, provides in relevant part:

An individual shall be disqualified for benefits:

(a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment, which may include employment for the federal government, and has earned in employment at least ten times the individual's weekly benefit rate, as determined in each case. . . . This subsection shall not apply to an individual who voluntarily leaves work with one employer to accept from another employer employment which commences not more than seven days after the individual leaves employment with the first employer, if the employment with the second employer has weekly hours or pay not less than the hours or pay of the employment of the first employer, except that if the individual gives notice to the first employer that the individual will leave employment on a specified date and the first employer terminates the individual before that date, the seven-day period will commence from the specified date.

[N.J.S.A. 43:21-5(a) (emphasis denoting the 2015 amendment).]

The Board of Review and McClain and Blake give dueling plain-language interpretations of N.J.S.A. 43:21-5(a). In the Board's view, the triggering event for UI benefit eligibility is the commencement of the new employment; in McClain and Blake's view, it is the acceptance of new employment. The Board contends that, under the statute, entitlement to UI benefits requires that the employee actually begin work with the new employer within seven days. The Board asks us to read N.J.S.A. 43:21-5(a) in the

14

following way: "This subsection shall not apply to an individual who voluntarily leaves work with one employer to accept from another employer employment which [actually] commences not more than seven days after the individual leaves employment with the first employer . . . ."

McClain and Blake claim that entitlement to UI benefits merely requires that an employee accept an offer of employment scheduled to begin seven days after leaving her former employment. They ask us to read N.J.S.A. 43:21-5(a) in the following fashion: "This subsection shall not apply to an individual who voluntarily leaves work with one employer to accept from another employer employment which [is scheduled to] commence[] not more than seven days after the individual leaves employment with the first employer . . . ." That interpretation allows for the granting of UI benefits when the new employer rescinds the offer before the employee begins work.

To accept either of the parties' divergent interpretations of N.J.S.A. 43:21-5(a), we would have to write into the statute qualifying language, a task that is beyond the purview of this Court. See DiProspero, 183 N.J. at 492. Ultimately, we conclude that a plain reading of the statute yields two plausible interpretations.

Although we may look to extrinsic sources in an attempt to divine the interpretation intended by the Legislature, a review of the legislative history provides no decisive answer.

E.

Before passage of the 2015 amendment, Senator Fred H. Madden, Jr., the amendment's sponsor, issued a statement in support of the Senate Bill. See Sponsor's Statement to S. 2082 30-31 (May 19, 2014). The Statement provided:

> Current law disqualifies any worker who voluntarily leaves a job from receiving UI benefits and requires the worker to become reemployed and work at least eight weeks, earning at least 10 times the workers weekly UI benefit rate, before again being eligible for UI benefits. This bill would make an exception from that requirement for a worker who leaves one job to accept a subsequent job at least equal in hours or pay, but is laid off from the subsequent job.
>
> [Ibid.]

At the June 5, 2014 hearing of the Senate Labor Committee, Senator Madden indicated that the bill responded to "real life" situations, such as one in which an employee worked for three years at a job, voluntarily left for new employment, and then became unemployed four weeks later when the new employer went bankrupt. Hearing on S. Comm. Substitute for S. 2082 before the S. Labor Comm. 3-4 (June 5, 2014) (statement of Sen. Madden).

16

Under the then-law, as Senator Madden explained, the employee was disqualified from receiving UI benefits because, upon starting her new job, the "clock reset[] to zero" and she had not worked the requisite number of weeks or reached the earned income threshold to qualify for UI benefits. Id. at 4-5. Senator Madden's example makes clear that one express purpose of the amendment was to fill in a gap in the law that deprived an employee who had earned UI eligibility at one job from accessing UI benefits after she voluntarily left for equal or better employment and then was terminated shortly afterwards at her new job. Senator Madden observed at the Senate hearing that when drafting a bill he tries to evaluate "the different angles of how to make the bill do everything that we intend it to do without missing anybody." Id. at 8-9.

Merely because the plight of an employee denied UI benefits resulting from rescission of an employment offer was not explicitly discussed at the hearing does not mean the Legislature intended to exclude such an employee from the protection of the amendment. The example given by Senator Madden does not necessarily define the full reach of the amendment or address the full range of inequities that the new law was intended to address. See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it. . . ." (quoting United States v. O'Brien,

17

391 U.S. 367, 384 (1968))); see also N.J. Coal. of Health Care Prof'ls, Inc. v. DOBI, 323 N.J. Super. 207, 263 (App. Div. 1999) ("Expressions of opinion during legislative hearings certainly may reflect the contemporaneous intention of certain legislators, and may be considered. However, the language of the statute and the findings and declarations made in the statute itself control."). Nothing in the legislative history suggests that Senator Madden -- or other legislators -- intended a constricted application of N.J.S.A. 43:21-5(a) that would produce the following inequitable result: an employee works for three years at one job and accepts new employment to begin in seven days, but is rendered ineligible for UI benefits solely because the new employer rescinds the offer the day before the start date.

Based on the legislative history, we cannot conclude that the Legislature intended to disqualify UI benefit protection to the class of employees, such as McClain and Blake, who earned UI benefit eligibility at their former jobs but were rendered unemployed through no fault of their own because of the rescission of an accepted offer of new employment that was scheduled to commence within seven days.

In summary, the legislative history does not provide the necessary clarity to give meaning to the disputed language of the statute.

18

IV.

A.

We are presented with ambiguous statutory language and inconclusive legislative history that leads to two plausible interpretations of N.J.S.A. 43:21-5(a). This seeming stalemate is resolved by looking to the underlying objective of the Unemployment Compensation Law and the equitable purpose of the amendment.

The UCL is social legislation intended to provide financial relief to an employee who is out of work through no fault of her own and "is to be liberally construed in favor of claimants to effectuate its remedial purposes." Brady, 152 N.J. at 212. Viewed through the lens of two conflicting and plausible textual interpretations of N.J.S.A. 43:21-5(a), the statute must be "construed liberally in favor of allowance of benefits." See Utley, 194 N.J. at 543 (quoting Yardville Supply Co., 114 N.J. at 374).

Cast in that light, McClain and Blake fall within the category of workers the Legislature intended to protect by the amendment. Under the Blake panel's interpretation, McClain and Blake could have collected UI benefits if they had commenced their new jobs and were fired the next day, but instead they are disqualified from collecting benefits because their offers were rescinded just days before starting their new jobs. That absurd result is not

19

one that the Legislature likely envisioned or intended and is completely at odds with the enlightened purposes of the UCL.

## B.

The facts are not in dispute. McClain and Blake both tendered their resignations upon accepting an offer of work with a new employer. They both accepted positions that promised higher hourly wages than their old jobs. Their new employment, moreover, was scheduled to commence within seven days of their final day at their old jobs. The only remaining issue is whether their new employers' rescission of their accepted job offers before the start date disqualified them from receiving UI benefits under N.J.S.A. 43:21-5(a). Based on our interpretation of N.J.S.A. 43:21-5(a), we conclude that McClain and Blake are entitled to UI benefits because (1) they qualified for UI benefits at their former employment at the time of their departure, (2) they were scheduled to commence their new jobs within seven days of leaving their former employment, and (3) their new job offers were rescinded through no fault of their own before the start date.

## C.

We emphasize that the Blake panel mistakenly believed that the "first employer would bear the financial consequences of any benefits awarded" if the new employer rescinded the offer before the employee's start date. See

452 N.J. Super. at 16. Indeed, the parties agree that the first employer will not bear any financial consequences if claimants, similarly situated to McClain and Blake, collect unemployment benefits. N.J.S.A. 43:21-7(c)(1) provides that

> an employer's account shall not be charged for benefits paid to a claimant if the claimant's employment by that employer was ended in any way which, pursuant to subsection (a), (b), (c), (f), (g) or (h) of [N.J.S.A. 43:21-5], would have disqualified the claimant for benefits if the claimant had applied for benefits at the time when that employment ended.

That statute makes clear that an employer's UI account is not charged when an employee voluntarily quits her employment.[2] Accordingly, the first employer will not be charged under the amendment if the second employer

---

[2] Notably, the Senate Labor Committee's Statement to the bill enacted as N.J.S.A. 43:21-5(a) indicated that the new law did not have to explain the financial impact on the first employer's UI account because "[a]nother portion of current law, [N.J.S.A. 43:21-7(c)(1)], provides that an employer's UI account is not charged for UI benefits paid to a claimant if the employee's employment with the employer ended in any way which would have disqualified the claimant from UI benefits." S. Labor Comm. Statement to S. Comm. Statement to 2082, 1-2 (June 5, 2014); see also A. Labor Comm. Statement to S. Comm. Substitute for S. 2082, 1-2 (Sept. 11, 2014); A. Appropriations Comm. Statement to S. Comm. Substitute for S. 2082, 1-2 (Feb. 5, 2015). Thus, the Committee reasoned, "under those provisions of the current law, that employer's account would not be charged when the claimant leaves work with that employer to accept employment from another employer." S. Labor Comm. Statement to S. Comm. Substitute for S. 2082, 1-2.

rescinds the offer before the employee begins the second job or if the employee is laid off after one week of work.[3]

We also reject the Blake panel's conclusion that the last clause of the amendment is inconsistent with an interpretation of N.J.S.A. 43:21-5(a) that extends UI benefits to employees whose accepted job offers are rescinded before the start date. See 452 N.J. Super. at 12-13. That clause provides that "if the individual gives notice to the first employer that the individual will leave employment on a specified date and the first employer terminates the individual before that date, the seven-day period will commence from the specified date." N.J.S.A. 43:21-5(a). That provision merely dictates that when an employee gives notice that she will quit her job on a specific date, that is the date from which to calculate the seven-day period before she begins her job.

The quoted language addresses a scenario illustrated by the following example: on January 1, an employee gives notice to her employer that she will resign on January 14 to accept a new job beginning on January 17 -- within seven days of her resignation. In response, the first employer terminates her

---

[3] UI benefit payments come from the Unemployment Trust Fund, which is funded through contributions made by employers and employees. N.J.S.A. 43:21-7 to -9. As amicus NELA indicates, N.J.S.A. 43:21-3(d)(1)(B)(ii) and N.J.S.A. 43:21-19(c)(1) establish that the second employer will not be charged either.

22

employment effective immediately, preventing her from starting her job within the seven-day period contemplated by the statute. The statute's protective language makes the operative date for calculating the seven-day period January 14 and thus safeguards the employee from losing UI benefits through the unilateral action of the first employer. Similarly, when an employee intends to begin working at the second job within seven days, but has her offer rescinded through no fault of her own, the unilateral action by the second employer does not disqualify the employee from receiving unemployment benefits. Read in that way, N.J.S.A. 43:21-5(a) protects the employee's right to UI benefits from the unilateral action of either the first or second employer.

Last, we do not harbor the concerns expressed by the Blake panel about the difficulty of exposing the hypothetical employee who might feign a rescinded offer to qualify for UI benefits. See Blake, 452 N.J. Super. at 16. The employee must satisfy the burden of establishing that she is entitled to UI benefits. Brady, 152 N.J. at 218. An adversarial party or the Deputy Director of Unemployment Insurance may make appropriate inquiries if the legitimacy of an employee's proofs come into question.

V.

For the reasons expressed, in accordance with N.J.S.A. 43:21-5(a), we hold that McClain and Blake are entitled to UI benefits. We therefore affirm

the judgment of the <u>McClain</u> panel, reverse the judgment of the <u>Blake</u> panel, and remand to the Board of Review for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.