**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2526-24

MALCOLM S. HUNTER, SR.,
a/k/a MALCOLM HUNTER,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and VILLAGE SUPER MARKET
OF N.J., L.P.,

     Respondents.

_____

Submitted January 21, 2026 – Decided February 9, 2026

Before Judges Sumners, Susswein and Chase.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 345581.

Malcolm S. Hunter, Sr., self-represented appellant.

Jennifer Davenport, Acting Attorney General, attorney for respondent Board of Review (Christopher Weber, Assistant Attorney General, of counsel; Gina Labrecque, Deputy Attorney General, on the brief).

PER CURIAM

Malcolm Hunter appeals from a June 25, 2024 Board of Review ("Board") final agency decision that he is ineligible for unemployment benefits under the Unemployment Compensation Law ("UCL"), N.J.S.A. 43:21-1 to -71, and, as a result, is liable to refund $1,604 in benefits he received prior to the ineligibility determination. We affirm.

I.

In September 2020, Hunter pled guilty to unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) and was sentenced to an aggregate prison term of five years. State v. Hunter, No. A-0325-22 (App. Div. Jan. 17, 2024). After his transfer to a half-way house in October 2022, he began working through a work release program with respondent,[1] Village Super Market of N.J., LP. ("ShopRite").

Hunter provided two potential parole addresses to the parole board, one in New Jersey and one in North Carolina. In March 2023, per his request, he was paroled to North Carolina. Hunter then applied for unemployment benefits and was awarded $401 weekly, for the weeks ending May 13 through June 3, 2023.

---

[1] This respondent has not appeared, filed a brief, or participated in these proceedings.

A-2526-24

Subsequently, the New Jersey Department of Labor and Workforce Development, Division of Unemployment Insurance (the "Agency") deemed him ineligible for benefits because he voluntarily resigned from his employment without good cause. The Agency notified him of its decision and required him to refund the $1,604 benefits paid to him. Hunter was then issued a re-determination letter affirming he was ineligible for unemployment benefits and liable to refund the $1,604 received.

Hunter timely appealed both determinations to the Agency's Appeals Tribunal ("Tribunal"). In March 2024, Hunter testified via telephone before the Tribunal's hearing examiner. He explained that the halfway house informed him of his upcoming parole to North Carolina, an address he had provided. He told ShopRite about his impending relocation and sought a transfer to a North Carolina store, but ShopRite has no locations there.

The Tribunal upheld the Agency's decision, ruling that Hunter was disqualified from receiving unemployment benefits under N.J.S.A. 43:21-5(a) and N.J.A.C. 12:17-9.1, and that he must refund the benefits under N.J.S.A. 43:21-16(d). The Tribunal found Hunter left work to relocate out of state for personal reasons. Citing N.J.A.C. 12:17-9.1(e)(6), the Tribunal classified his separation as a voluntary departure to another area for personal reasons. While

the Tribunal recognized that Hunter's relocation was personally compelling, it found that his reason for leaving was not related to his work.

Hunter timely appealed to the Board. On February 20, 2025, the Board affirmed the Tribunal's decision based on the record.

This appeal followed.

II.

Our review of decisions by administrative agencies is limited. D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 352 (App. Div. 2020); In re Stallworth, 208 N.J. 182, 194 (2011). "We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). Thus, "we will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious[,] or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

"Moreover, '[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather

whether the factfinder could reasonably so conclude upon the proofs.'" Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)) (alteration in original). We afford "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." Matter of Request to Modify, 242 N.J. 357, 390 (2020).

Although "we must give deference to the agency's findings of facts, and some deference to its 'interpretation of statutes and regulations within its implementing and enforcing responsibility,' we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue[.]'" Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008) (citations omitted) (first quoting Matter of Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997), and then quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). In other words, a reviewing court "defer[s] to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable." Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018).

III.

Hunter argues the Board erred by finding that he voluntarily abandoned his job. He contends his parole relocation prevented further employment and deprived him of control over his movement. We are not persuaded.

The UCL's purpose is to assist workers who face involuntary unemployment by providing temporary income when job loss occurs through no fault of their own. Brady, 152 N.J. at 212. The UCL, given its remedial purpose, "'is to be liberally construed in favor of claimants.'" McClain v. Bd. of Rev., Dept. of Labor, 237 N.J. 445, 461 (2019) (quoting Brady, 152 N.J. at 212). While doing so, we must remain cognizant of "the importance of 'preserv[ing] the [unemployment insurance trust] fund against claims by those not intended to share in its benefits.'" Ardan, 231 N.J. at 602 (quoting Brady, 152 N.J. at 212); see also Bannan v. Bd. of Rev., 299 N.J. Super. 671, 674 (App. Div. 1997) (discussing that the Board's responsibility is to serve both the interest of the unemployed and "the interests of the general public").

Eligibility to receive unemployment benefits is governed by N.J.S.A. 43:21-5, which reads, inter alia:

> An individual shall be disqualified for benefits:
>
> (a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment, which may include employment for the federal government, and has earned in employment at least ten times the individual's weekly benefit rate, as determined in each case. . . . .
>
> [N.J.S.A. 43:21-5(a) (emphasis added).]

A-2526-24

Per N.J.A.C. 12:17-9.1(b), "'good cause attributable to such work' means a reason directly related to the individual's employment, which . . . give[s] the individual no choice but to leave the employment." See Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 52 (App. Div. 1964)) (stating "[t]he test of 'ordinary common sense and prudence' must be utilized to determine whether an employee's decision to leave work constitutes good cause"). Further,

> (e) An individual's separation from employment shall be reviewed as a voluntarily leaving work issue where the separation was for the following reasons including, but not limited to:
>
> . . . .
>
> 6. Relocating to another area for personal reasons;
>
> [N.J.A.C. 12:17-9.1(e).]

"In the wake of a voluntary departure from work, the claimant bears the burden to establish good cause attributable to such work for leaving." Ardan, 231 N.J. at 603 (internal quotation marks omitted); N.J.A.C. 12:17-9.1(c).

When an employee voluntarily leaves work for personal reasons unrelated to the employment, he or she is disqualified from receiving benefits under N.J.S.A. 43:21-5(a). Self v. Bd. of Rev., 91 N.J. 453, 457-58 (1982). We have held a parolee, who quit work because she had no car and was required as a condition of parole to move to a residence thirty-eight miles away from

employment was disqualified. White v. Bd. of Rev., 146 N.J. Super. 268, 269-71 (App. Div. 1977). We have also held an employee who leaves work because they found a different place to live is disqualified from employment compensation. Roche v. Bd. of Rev., 156 N.J. Super. 63, 65 (App. Div. 1978).

Hunter cannot establish that his parole to North Carolina is involuntary within the meaning of the statutory framework. Under N.J.S.A. 30:4-123.54 and N.J.A.C. 10A:71-6.10, a parolee must participate actively in the parole process and select a relocation address. The record does not support that the Parole Board sent Hunter to North Carolina arbitrarily or without his assent. Hunter would have had to actively engage in the parole process and choose North Carolina as a location. Therefore, the Board properly concluded that Hunter is ineligible for unemployment benefits, as his separation stemmed from personal reasons and does not qualify as good cause attributable to the work. See Haley v. Bd. of Rev., Dept. of Labor, 245 N.J. 511, 521 (2021) (requiring a fact-sensitive analysis).

Once it was determined that Hunter was found to have not been entitled to receive benefits, N.J.S.A. 43:21-16(d)(1) requires the full repayment of unemployment benefits received by a claimant. Bannan v. Bd. of Rev., 299 N.J. Super. at 674. Refunds must be paid "regardless of good faith," hardship, or reliance on an initial agency determination. Sullivan, 471 N.J. Super. at 155

8

(quoting Bannan, 299 N.J. Super. at 674-75). And under federal law, states must provide for recoupment in their unemployment compensation laws to be eligible for "federal funds to assist in the administration of those laws." Bannan, 299 N.J. Super. at 675; see also 42 U.S.C. § 503(a)(9) and (g) (requiring states to implement effective procedures to prevent and detect unemployment insurance fraud and overpayments).

Nevertheless, where overpayment is not pursuant to misrepresentation or omission of material facts, the Agency, "[u]pon request of the claimant[,] . . . may grant the claimant a full waiver of recovery of an overpayment of benefits . . ." only where: (1) the claimant is deceased; (2) the claimant is disabled and unable to work; or (3) recovery of the overpayment would be patently inequitable. N.J.A.C. 12:17-14.2(a). Per N.J.A.C. 12:17-14.2(d), in determining if repayment would be inequitable the Agency considers "whether the terms of a reasonable repayment schedule would result in economic hardship to the claimant."

Hunter does not proffer any facts supporting his claim that it would be inequitable to require him to repay the $1,604. Notably, he has failed to provide information regarding his current employment, income, or a repayment plan. Having reviewed the record, we discern no error in the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2526-24