**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4346-19

JEFFREY SUSTEK,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and RUOFF & SONS, INC.,

     Respondents.

_____

Submitted October 28, 2021 – Decided January 26, 2022

Before Judges Geiger and Susswein.

On appeal from the Board of Review, Department of Labor, Docket 209,428.

Jeffrey Sustek, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent Board of Review, Department of Labor (Jane C. Shuster, Assistant Attorney General, of counsel; Christopher J. Hamner, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Jeffrey Sustek appeals from a July 6, 2020 decision by the Department of Labor Board of Review (the Board) denying his application for unemployment compensation benefits. The Board affirmed the Appeal Tribunal's denial, finding that plaintiff is disqualified from obtaining unemployment compensation because he "left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a). After carefully reviewing the record in view of the governing legal principles, we affirm substantially for the reasons set forth in the Board's written decision. We decline to address Sustek's alternate contention, raised for the first time on appeal, that he is entitled to compensation benefits under the Pandemic Emergency Compensation law. Sustek must first apply for and be denied benefits under that law before seeking our intervention.

I.

We adduce the following facts and procedural history from the record. From September 2017 to January 2020, Sustek worked for Ruoff & Sons, Inc., (Ruoff) as a computer numeric control machinist. The record indicates that he was suffering from substance abuse during the period he was employed at Ruoff. In early January 2020, Sustek left his job and admitted himself into an inpatient substance abuse rehabilitation program in Florida. Before leaving, Sustek

notified his superior of his intention to enter an out-of-state rehabilitation program. He did not, however, request a leave of absence. On January 31, 2020, Ruoff terminated Sustek's employment. Ruoff notified Sustek's parents of his termination as he did not have access to a phone during his inpatient rehabilitation and the employer did not know the name or address of the treatment provider.

Sustek was discharged from the inpatient rehabilitation program on or about February 22, 2020. He filed for unemployment compensation benefits the next day. He did not, however, attempt to contact Ruoff and did not inquire about the possibility of returning to his job. Around the same time as filing for unemployment compensation, Sustek entered a halfway house. The record is not entirely clear regarding the circumstances of his admission to the halfway house. Sustek claims that he was "kidnapped" for several weeks.

On March 16, 2020, Sustek's application for unemployment compensation benefits was denied on the ground that he had left work voluntarily without good cause attributable to work. Sustek filed an appeal with the Department's Appeal Tribunal. Because of the pandemic, the ensuing hearing was conducted by telephone on April 28, 2020. Sustek testified at the hearing and acknowledged that he did not ask Ruoff for a leave of absence. He also candidly acknowledged

that, "Ruoff is not a job [he was] actually interested in going back to . . . even if they offer[ed] [him] a job back."

The Appeal Tribunal affirmed the initial determination that Sustek was not eligible for unemployment compensation benefits in accordance with the qualification criteria set forth in N.J.S.A. 43:21-5(a).  Sustek next appealed to the Board, which affirmed the Appeal Tribunal's factual findings and ultimate determination, rendering a written opinion on July 6, 2020.

This appeal of that final agency decision followed.  Sustek, who appears before us pro se, raises the following contentions for our consideration:

> POINT I
>
> THE BOARD OF REVIEW'S DECISION TO DISQUALIFY THE CLAIMAINT FOR BENEFITS WAS BASED ON OPINION AND NOT FACT.
>
> POINT II
>
> THE CLAIMAINT SHOULD HAVE ALSO BEEN CONSIDERED UNDER THE PANDEMIC EMERGENCY UNEMPLOYMENT COMPENSATION (PEUC).  THEREFORE, HE SHOULD NOT HAVE BEEN DISQUALIFIED OR INELIGIBLE FOR BENEFITS.  (NOT RAISED BELOW)

4

II.

Because we affirm substantially for the reasons explained in the Board's written decision, we need not address Sustek's contentions at length. We add the following comments:

The scope of our review of the Board's decision is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). A final decision of an administrative agency should not be disturbed unless it is arbitrary, capricious, or unreasonable. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The party challenging an administrative action bears the burden of demonstrating that the decision was arbitrary, capricious, or unreasonable. Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

"In reviewing a final agency decision, such as that of the Board . . . , we defer to factfindings that are supported by sufficient credible evidence in the record." McClain v. Bd. of Rev., 237 N.J. 445, 456 (2019) (citing Brady, 152 N.J. at 210). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for [that of] the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483

A-4346-19

(2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

When determining whether a state agency acted within the scope of its authority, we consider the following factors:

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant facts.
>
> [Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Rev., 197 N.J. 339, 360 (2009) (citing Brady, 152 N.J. at 211).]

In light of these factors, reviewing courts "must defer to an agency's expertise and superior knowledge of a particular field." In re Carter, 191 N.J. at 483 (quoting Greenwood, 127 N.J. at 513).

In the specific context of unemployment benefits, reviewing courts generally construe New Jersey's Unemployment Compensation Law "liberally in favor of [the] allowance of benefits." Lord v. Bd. of Rev., 425 N.J. Super. 187, 195 (App. Div. 2012) (quoting Utley v. Bd. of Rev., 194 N.J. 534, 543 (2008)). However, the law is specifically meant for "protection against the hazards of economic insecurity due to involuntary unemployment." Yardville

A-4346-19

Supply Co. v. Bd. of Rev., 114 N.J. 371, 374 (1989) (citing N.J.S.A. 43:21-2). Therefore, if "an employee leaves work voluntarily, he [or she] bears the burden to prove he [or she] did so with good cause attributable to work." Brady, 152 N.J. at 218.

An employee leaves work voluntarily within the meaning of N.J.S.A. 43:21-5(a) when "the decision whether to go or to stay lay at the time with the worker alone." Lord, 425 N.J. Super. at 191 (quoting Campbell Soup Co. v. Bd. of Rev., 13 N.J. 431, 435 (1953)). Our Supreme Court has recognized that "[t]he test of 'ordinary common sense and prudence' must be utilized to determine whether an employee's decision to leave work constitutes good cause." Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 52 (App. Div. 1964)).

Regulations promulgated by the Department of Labor provide "a non-exhaustive list of examples in which a claimant's separation from employment" constitutes voluntarily leaving work:

>	1. Lack of transportation;
>
>	2. Care of children or other relatives;
>
>	3. School attendance;
>
>	4. Self-employment;

5. Lack of housing;

6. Relocating to another area for personal reasons;

7. Relocating to another area to accompany a spouse, a civil union partner, or other relatives;

8. Voluntary retirement;

9. To accept other work; or

10. Incarceration.

[Ardan v. Bd. of Rev., 231 N.J. 589, 603 (2018) (citing N.J.A.C. 12:17-9.1(e)).]

When, as is this case, an employee leaves work for medical reasons, that decision may fall within an exception to the voluntary departure rule. The governing regulation provides,

> An individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.
>
> [N.J.A.C. 12:17-9.3(b).]

Furthermore,

> an individual who has been absent because of a personal illness or physical and/or mental condition shall not be subject to disqualification for voluntarily leaving work if the individual has made a reasonable effort to preserve his or her employment, but has still been terminated by the employer. A reasonable effort is evidenced by the employee's notification to the employer, requesting a leave of absence or having taken other steps to protect his or her employment.
>
> [N.J.A.C. 12:17-9.3(c).]

In the present matter, it is not disputed that Sustek left work to address his substance abuse by relocating to Florida to attend an inpatient program. See N.J.A.C. 12:17-9.1(e)(6). The Appeal Tribunal determined—and the Board affirmed—that

> the claimant severed the working relationship for personal reasons due to the unfortunate circumstances surrounding his substance abuse issues, which forced him to relocate temporarily. While a compelling and understandable reason to resign from employment, the circumstance is strictly personal, unrelated to the working conditions. Hence, the claimant is disqualified for benefits under N.J.S.A. 43:21-5(a) as of 12/29/19, as the claimant left work voluntarily without good cause attributable to such work.

On appeal the Board also addressed Sustek's contention that "he was technically on a leave of absence, as he requested time off to go into a rehabilitation program." The Board found that "the claimant, through his own

9

admission, did not contact the employer for work after his rehabilitation ended because he had no intention of returning to his job."

We are satisfied that the Board's findings, which affirm the Appeal Tribunal's findings, are "supported by sufficient credible evidence in the record." McClain, 237 N.J. at 456. As noted, Sustek testified that he did not ask for a leave of absence or inquire about the possibility of returning to the job once he completed the inpatient treatment program. Indeed, he testified that he was not interested in returning to his former job even if it were offered to him. That candid testimony clearly establishes that he did not make a reasonable effort, indeed any effort, to preserve his employment within the meaning of N.J.A.C. 12:17-9.3(c).

We acknowledge that the disease of addiction falls within the scope of health or medical reasons that might justify an employee's departure from work. As the Board correctly noted, however, nothing in the record suggests that Sustek's substance abuse originated from his work for Ruoff. Nor does the record reflect that his substance abuse problem was aggravated by his work for Ruoff. See N.J.A.C. 12:17-9.3(b). Rather, the record merely indicates that Sustek determined it was finally time to get help.

We commend him for his courageous decision to confront his addiction and to accept the rigors of residential substance abuse treatment. That decision, while laudable, is not sufficient by itself to establish his qualification for unemployment compensation benefits absent proof that his addiction was job-related. Despite Sustek's arguments to the contrary, the Board's conclusion with respect to the relationship—or lack thereof—between his substance abuse and his work for Ruoff is consistent with the reasoning underpinning our prior decisions. In Inside Radio/Radio Only, Inc. v. Bd. of Rev., for example, we affirmed the Board's determination that the employee was entitled to unemployment compensation. 204 N.J. Super. 296, 299–300 (App. Div. 1985). In that case, the employee's duties forced her "to work 60 to 80 hours a week, to forego meals and obtain medical care for fatigue, nutritional problems and a mild depression." Id. at 299. As such, the employee in Inside Radio had no reasonable alternative other than to leave her position. Id. at 298. No such evidence was presented in this case with respect to Sustek's work responsibilities at Ruoff.

In Israel v. Bally's Park Place, Inc., we reversed the Board's decision to deny unemployment benefits to a recovering alcoholic. 283 N.J. Super. 1, 5 (App. Div. 1995). Israel worked in a casino and became dependent on alcohol.

11

Id. at 3. After entering a rehabilitation program, her counselors and therapists advised her against returning to the casino environment, warning her that such an environment could disrupt her sobriety and recovery efforts. Ibid. We concluded that Israel adequately demonstrated, "through uncontroverted medical evidence, that her disease has been and will be aggravated by the casino environment." Id. at 5. On that basis, she was entitled to unemployment benefits. Ibid. No such evidence was presented in this case to suggest that the environment at Ruoff was in any way comparable to a casino in terms of exposure to intoxicating substances.

In the present matter, contrary to the situations described in Inside Radio and Israel, nothing in the record suggests that Sustek's substance abuse resulted from or was exacerbated by his work as a computer numeric control machinist at Ruoff. Although we are sympathetic to the difficult challenges facing drug addicts who make earnest efforts to enter and remain in long term recovery, we are constrained to accord deference to the Board's fact finding. We thus have no basis upon which to overturn the Board's determination that Sustek's substance abuse was a personal problem unrelated to his employment.

The record also supports the Board's finding that Sustek did not properly preserve his employment. See N.J.A.C. 12:17-9.3(c). Although Sustek notified

12

his employer that he was leaving, he did not request a leave of absence, did not seek to return to work, and expressed his disinclination to accept re-employment by Ruoff even if it were offered. See N.J.A.C. N.J.A.C. 12:17-9.3(c) (noting that preserving employment requires a reasonable effort, including an "employee's notification to the employer, requesting a leave of absence or having taken other steps to protect his or her employment"). Defendant's candid admissions during the hearing amply support the Board's finding that he left work voluntarily and did not preserve his employment. Because the Board's findings are supported by substantial credible evidence in the record, McClain, 237 N.J. at 456, we conclude its final decision was not arbitrary, capricious, or unreasonable. Brady, 152 N.J. at 210.

We add, finally, that Sustek also argues that he was entitled to unemployment benefits under the Pandemic Emergency Unemployment Compensation (PEUC) law.[1] So far as the record before us shows, Sustek never

---

[1] In response to the Coronavirus pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Pub. L. No. 116–36, 134 Stat. 281. Under the CARES Act, states may enter into agreements with the Secretary of Labor to provide PEUC to individuals who:

> (A) have exhausted all rights to regular compensation
> under the State law or under Federal law with respect
> to a benefit year (excluding any benefit year that ended

applied for PEUC compensation. Accordingly, there is no final agency decision for us to review. Our Supreme Court has stressed that "[a]ppellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009). Therefore, "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also N.J. Dep't of Env't Prot. v. Huber, 213 N.J. 338, 372 (2013) ("Ordinarily, an issue may not be raised on appeal if not raised in the proceedings below.").

---

before July1, 2019); (B) have no rights to regular compensation with respect to a week under such law or any other State unemployment compensation law or to compensation under any other Federal law; (C) are not receiving compensation with respect to such week under the unemployment compensation law of Canada; and (D) are able to work, available to work, and actively seeking work.

[§ 2107(a)(2)(A)–(D).]

In these circumstances, we decline to address Sustek's newly minted contention. We offer no opinion whatsoever on whether he might be eligible for compensation benefits under this temporary assistance program.

To the extent we have not addressed them, any additional arguments Sustek raises lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4346-19